**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA** :

     **v.** : **CRIMINAL NO. 3:20-291**

**ROBERT JACKSON,** : (JUDGE MANNION)

     **Defendant** :

## <u>MEMORANDUM</u>

Presently before the court is Defendant Robert Jackson's objection to the presentence report, (Doc. 84), and his motion to dismiss the Government's §851 Information of Prior Convictions, (Doc. 8). (Docs. 88 & 89). Jackson asserts his prior New Jersey felony conviction for Possession with Intent to Distribute Cocaine within 500 Feet of Public Housing is not a "felony drug offense" subjecting him to a mandatory sentence of life imprisonment under 21 U.S.C. §841(b)(1)(C). The court disagrees for the reasons that follow. Therefore, Jackson's objection will be **OVERRULED** and his motion to dismiss the Government's §851 Information of Prior Conviction will be **DENIED**.

I. **BACKGROUND**[1]

On November 17, 2020, a grand jury returned a three-count indictment charging Jackson with conspiracy to distribute controlled substances in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), distribution of a controlled substance resulting in death in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), as well as aiding and abetting this offense under 18 U.S.C. §2 , and possession with intent to distribute fentanyl in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C), as well as aiding and abetting this offense under 18 U.S.C. §2. (Doc. 1). On November 18, 2020, the Government filed an information of prior convictions pursuant to 21 U.S.C. §851(a), citing Jackson's four New Jersey felony drug convictions as predicate offenses. (Doc. 8).[2] On November 19, 2020, Jackson had an initial appearance before Chief Magistrate Judge Mehalchick and entered a plea of not guilty.

---

[1] Since the complete procedural and factual background of this case is stated in the briefs of the parties, it will not be fully repeated herein. *See also* the court's November 30, 2021, Memorandum, (Doc. 36), denying Jackson's motion to suppress his statements, (Doc. 27).

[2] Relying on the definition of "serious drug felony," Jackson's briefing only addresses his 2006 New Jersey conviction for possession with intent to distribute cocaine within 500 feet of a public building because, he avers, that conviction is the only one of the four listed in the information of prior convictions that arguably meets the "serious drug felony" definition's requirements related to time of imprisonment and release therefrom. As explained below, the definition of "felony drug offense," not "serious drug felony," governs this matter, which does not include the same imprisonment

On February 8, 2022, a jury found Jackson guilty on all counts of the indictment. (Doc. 77). The court directed the Probation Office to prepare a Presentence Report (PSR) prior to sentencing. On May 27, 2022, the PSR was filed. (Doc. 83).

On May 27, 2022, Jackson objected to the government's Information of Prior Convictions under §851, (Doc. 8), claiming his 2006 New Jersey conviction for Possession with Intent to Distribute Cocaine within 500 Feet of Public Housing categorically fails to qualify as a predicate offense subjecting him to mandatory life imprisonment under 21 U.S.C. §841(b)(1)(C). (Doc. 86). The Government responded to Jackson's objection on June 1, 2022, with attached Exhibits, including copies of Jackson's New Jersey convictions. (Doc. 87). Jackson then filed a formal motion to dismiss the government's Information of Prior Convictions on June 15, 2022, with a brief in support and Exhibits. (Docs. 88 & 89).

---

requirements. Thus, Jackson's other three prior convictions may meet the lower "felony drug offense" standard. However, since §841(b)(1)(C) requires only one predicate felony drug offense and the court finds Jackson's 2006 cocaine conviction is such an offense, the court need not analyze whether the remaining offenses also qualify.

## II.    DISCUSSION

Defendants convicted under 21 U.S.C. §841(b)(1)(C) of distribution of a controlled substance resulting in death are subject to a mandatory term of life imprisonment if they have previously been convicted of a "felony drug offense." Defendant Jackson was convicted under that section by a jury in this case on Count 2 of the Indictment. In 2006, Jackson was convicted in New Jersey for Possession with Intent to Distribute Cocaine within 500 Feet of Public Housing in violation of N.J. Stat. §2C:5-7.1, a second-degree felony. Jackson argues that offense is not a predicate offense subjecting him to mandatory life imprisonment because the New Jersey definition of cocaine includes ioflupane while the federal definition does not; thus, according to Jackson, "the 2006 New Jersey definition of cocaine sweeps more broadly than the current definition for cocaine under the [Controlled Substances Act (CSA)]," (Doc. 89 at 9), so his cocaine conviction cannot serve as a predicate offense. The court disagrees.[3]

---

[3] Not at issue in this motion is whether the PSR correctly classifies Jackson as a "career offender," as that term is defined in the Guidelines. The Government spends over half of its 37-page brief in opposition to Jackson's motion to dismiss arguing the PSR properly classifies Jackson as a career offender. As Jackson notes in his brief, he does not object to his classification as a career offender. (Doc. 89 at 4 n.3). Thus, the court need not address the issue.

### A. Felony Drug Offense vs. Serious Drug Felony

At the outset, Jackson asserts the court should use the definition of "serious drug felony" in 21 U.S.C. §802(57) rather than that of "felony drug offense" in 21 U.SC. §802(44) to decide whether Jackson's New Jersey cocaine felony conviction is a predicate offense under 21 U.S.C. §841(b)(1)(C). It is true that "[t]he First Step Act lowered the statutory minimum sentences and substituted the predicate convictions for enhanced sentences from a 'felony drug offense' to either a 'serious drug felony or serious violent felony' under 21 U.S.C. §841(b)(1)(A)." *United States v. Zayas*, 32 F.4th 211, 230 (3d Cir. 2022). "The Act also replaced 'felony drug offense' with 'serious drug felony or serious violent felony' under §841(b)(1)(B)." *Id.* at 230–231. However, "[*t]he Act did not make any revisions to §841(b)(1)(C)*, the provision that applies to [Jackson's] penalty for conviction on [Count 2]." *Id.* at 231 (emphasis added). Therefore, §841(b)(1)(C) still proscribes mandatory minimums for a prior "felony drug offense."

Jackson nonetheless invites the court to disregard the statutory text and apply the "serious drug felony" definition due to a purportedly overriding Department of Justice policy to "not seek a mandatory sentence of life imprisonment under Section 841(b)(1)(C) . . . unless a defendant's prior

conviction meets the statutory definition of a serious drug felony[.]" (*See* Doc. 89 at 3 n.2). Jackson avers the Government in this case "indicated a willingness to follow the DOJ's policy." (Doc. 89 at 3).[4] Notwithstanding the DOJ policy or the Government's willingness to follow it, the court is bound by the statutory text and controlling precedent interpreting that text; the DOJ policy in this case does nothing to change the court's obligation and is in no way binding on the court. Accordingly, the question in this case as dictated by §841(b)(1)(C) is whether Jackson's New Jersey cocaine conviction is a prior "felony drug offense," as opposed to a "serious drug felony."

## B. Categorical Approach

In the Third Circuit, the categorical approach dictates whether a prior conviction qualifies as a predicate offense that triggers a mandatory life sentence under §841(b)(1)(C). *See United States v. Aviles*, 938 F.3d 503, 511 (3d Cir. 2019).[5] That approach constrains courts to consider only "the

---

[4] If the Government wishes to withdraw the previously filed §851 notice, pursuant to present DOJ policy, it certainly has the capability to do so. As of this date, no such motion to withdraw has been filed.

[5] While *Aviles* demonstrates generally that a categorical approach governs the predicate offense analysis, the specific finding in *Aviles* does not control here because even though the Third Circuit there stated that N.J. Stat. §2C:35-7 and N.J. Stat. §2C:35-4 "each criminalize conduct involving at least one substance not covered by Section 841's definition of 'felony drug offense[,]'" *Aviles*, 938 F.3d at 512, and thus found those statutes were not predicate felony drug offenses, the court "made that statement in *Aviles* in

statutory definition[] of [Jackson's] prior offense[], and not the particular facts underlying [that] conviction[]." *See Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) ("The elements, not the facts, are key."). The traditional categorical approach articulated in *Taylor* requires the court to "'compar[e] the elements of the statute forming the basis of the defendant's conviction with the elements of the generic [federal] crime." *See Aviles*, 938 F.3d at 511 (citing *United States v. Henderson*, 841 F.3d, 623, 627 (3d Cir. 2016)). However, §841(b)(1)(C) calls for a mandatory life sentence for defendants with a predicate "felony drug offense," which is defined in §802(44) by reference to certain prohibited *conduct*, not by reference to a federal criminal statute or a generic crime like burglary or arson. Thus, the court must determine not whether Jackson's prior New Jersey conviction was for a certain offense, but whether the conviction meets "some other criterion." *Shular v. United States*, 140 S. Ct. 779, 783 (2020); *United States v. Lewis*, 58 F.4th 764, 768 (3d Cir. 2023).[6]

_____

passing, without any explication of the drugs encompassed by the New Jersey statutes and 18 U.S.C. §802's complex definitions of 'narcotic drugs,' 'marihuana,' 'anabolic steroids,' and 'depressant or stimulant substances.'" *United States v. Vega*, No. 18-3764, 2022 WL 1552993, at *2 (3d Cir. May 17, 2022).

[6] The Court in *Shular* held the definition of "serious drug offense" in 18 U.S.C. §924(e)(2)(A)(ii) ("an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or

"In other words, there is no federal or generic offense to 'match' (or not) the elements of the state offense." *Lewis*, 58 F.4th at 768 (citing *United States v. Portanova*, 961 F.3d 252, 256–58 (3d Cir. 2020) (employing a "looser categorical approach" to define possession of child pornography that did not "require a precise match between the federal generic offense and state offense element")).

Here, the parties seem to agree that the "other criterion" to which the court must compare the elements of Jackson's prior conviction is the statutory definition of "serious drug felony." Under *Shular*, that comparison would require the court to decide whether the elements of Jackson's New Jersey conviction "necessarily entail one of the types of conduct" identified in 18 U.S.C. §924(e)(2)(A)(ii).[7] *Shular*, 140 S. Ct. at 784–85. However, as

---

distribute, a controlled substance") described conduct, and thus the traditional categorical matching exercise between the state law and a generic federal offense did not apply. That the definition of "felony drug offense" in §802(44) also describes conduct is even more plain since it specifically refers to an offense that "prohibits or restricts *conduct* relating to narcotic drugs[.]" (emphasis added); *accord Unites States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020) (The text of §802(44) "unquestionably refers to conduct and not generic offenses.").

[7] "Serious drug felony" is defined, in relevant part, in 21 U.S.C. §802(57) as "an offense described in [18 U.S.C. §]924(e)(2)," the statute at issue in *Shular*. 18 U.S.C. §924(e)(2)(A)(ii), in turn, includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the [CSA])[.]"

explained above, "serious drug felony" is not the criterion to which the court must compare Jackson's prior conviction because 21 U.S.C. §841(b)(1)(C)—the statute of Jackson's conviction in Count 2—uses the term "felony drug offense," not "serious drug felony" like the neighboring Subsections 841(b)(1)(A) and (B).

Thus, the "other criterion" to which the court must compare the elements of Jackson's prior conviction, *Shular*, 140 S. Ct. at 783, is the definition of "felony drug offense" found in §802(44). *See generally Lewis*, 58 F.4th at 768 (explaining that, under *Shular*, the court must compare the defendant's prior state conviction to the definition of "controlled substance offense" under Guidelines §4B1.2(b), which similarly references *conduct*, not a generic offense, for purposes of applying the career offender enhancement). "Felony drug offense" means:

> an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C. §802(44). Jackson's New Jersey cocaine conviction was for an offense under state law punishable by imprisonment for more than one year. *See* 2006 N.J. Stat. §2C:35-7.1(a); (Doc. 89-1). The court's decision turns then on whether the state law under which Jackson was convicted

categorically "prohibit[ed] . . . conduct relating to narcotic drugs[.]" More specifically, the question is whether possession with intent to distribute cocaine within 500 feet of a public building, as prohibited by N.J. Stat. §2C:35-7.1(a), is "conduct relating to narcotic drugs."

"Narcotic drugs" is defined broadly in §802(17) to include cocaine and its related compounds and derivatives:

> (17) The term "narcotic drug" means any of the following whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:
> . . .
> (C) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed.
> (D) Cocaine, its salts, optical and geometric isomers, and salts of isomers.
> (E) Ecgonine, its derivatives, their salts, isomers, and salts of isomers.
> (F) Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subparagraphs (A) through (E).

21 U.S.C. §802(17). At the time of Jackson's 2006 conviction, N.J. Stat. §2C:35-7.1(a) provided:

> Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree, except that is a crime of the

third degree if the violation involved less than one ounce of marijuana.

(*See* Doc. 89-1). In 2006, cocaine was a controlled dangerous substance in New Jersey defined as "coca leaves and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or ecogine." 2006 N.J. Stat. §24:21-6(c)(4) (Schedule II); (*see* Doc. 89-3).

With those definitions in mind, we turn to Jackson's argument. To reiterate, relying on the categorical approach Jackson argues the New Jersey definition of cocaine sweeps more broadly than the federal definition and thus cannot be a predicate offense under §841(b)(1)(C). His argument hinges on the theory that "the New Jersey criminal code included [i]oflupane within its definition of cocaine, but the current federal Controlled Substances Act excludes [i]oflupane from its definition of cocaine." (Doc. 89 at 1). That the New Jersey definition of cocaine includes ioflupane is fairly well-established. *See, e.g.*, *United States v. Scott*, 2021 WL 6805797, at *10 (D. N.J. Dec. 6, 2021) ("New Jersey law does not exclude Ioflupane from New Jersey drug schedules.") (citing N.J. Stat. Ann. §24:21-6(c)-(d); *State v.*

*Cathcart*, 589 A.2d 193, 197 (N.J. Super. Ct. App. Div. 1991) ("[A]ll forms of cocaine are prohibited by statute."); *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018) ("To be sure, the New Jersey statute criminalizes any derivative of coca leaves. And federal law currently exempts [i]oflupane, a derivative of coca leaves, from the lists.")). On the other hand, ioflupane has been expressly excluded since 2015 from the federal drug schedules—Schedule II, specifically. *See* 21 C.F.R. §1308.12(b)(4) (excluding from the cocaine definition in Schedule II "[d]ecocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine" and "[i]oflupane."); *see also* Schedules of Controlled Substances: Removal of [*123* I]ioflupane From Schedule II of the Controlled Substances Act, 80 Fed. Reg. 54715, 54715 (Sept. 11, 2015) (removing ioflupane from Schedule II of the Act).

All that said, Jackson's reliance on the exclusion of ioflupane from Schedule II of the CSA is misplaced because "narcotic drugs" (the term used in the definition of "felony drug offense") is not defined with reference to the CSA schedules; rather, the narcotic drugs definition is self-contained in 21 U.S.C. §802(17). If Congress intended the definition of narcotic drugs to be constrained by the CSA schedules, it could have done so as it did in the definition of "controlled substance" in the same chapter. *See* §802(6) ("The

- 12 -

term 'controlled substance' means a drug . . . included in schedule I, II, III, IV, or V of part B of this subchapter."). Thus, in the absence of an express reference to the CSA schedules in the definition of narcotic drugs, the 2015 exclusion of ioflupane from Schedule II did nothing to change the definition of narcotic drugs in §802(17), which does not exclude ioflupane. And thus, the sole ground Jackson asserts for the purported overbreadth of the New Jersey cocaine definition fails, and denial of his motion is proper on that basis.[8]

### C. "Related to" Narcotic Drugs

Finally, even if the inclusion of ioflupane in the New Jersey definition of cocaine made it slightly broader than the federal definition of narcotic drugs, in the court's view, Jackson's prior cocaine conviction would still qualify as a predicate "felony drug offense." This is so because the definition of felony drug offense in §802(44) uses the language "*related to*," as in "conduct *related to* narcotic drugs," which has a clear broadening effect on the scope of offenses included therein. Thus, assuming *arguendo* New Jersey's inclusion of ioflupane in its definition of cocaine makes it broader

---

[8] The court need not decide when to compare Jackson's New Jersey offense to the federal the definition of "narcotic drug" because that definition has remained unchanged during the relevant time periods herein.

than the federal definition, that does not suddenly make the conduct prohibited in the New Jersey offense of possession with intent to distribute cocaine unrelated to narcotic drugs. To say as much would be to require an exact match between the state and federal definitions, *i.e.*, what the Third Circuit has labeled the "strict categorical approach."[9] But, as explained above, that approach, as noted by the Third Circuit in *Lewis*, was eschewed by the Supreme Court in *Shular*, which invites a looser categorical approach for predicate offenses defined with reference to prohibited conduct. The broad "related to" language makes the analysis in this case more akin to that in *Portanova*, which the Third Circuit recently cited in *Lewis* as demonstrating the looser categorical approach permitted by *Shular*. *See Lewis*, 58 F.4th at 768. As the Third Circuit has explained, "this approach does not require a precise match between the federal generic offense and state offense elements," rather, "the phrase 'relating to' must be 'read expansively'" and courts should simply analyze whether the state and federal offenses possess "a logical or causal connection," *i.e.*, "target the same core criminal conduct

---

[9] *See Portanova*, 961 F.3d at 255 n.13 (listing the various names the Third Circuit has given to the strict categorical approach, including "traditional," "strict," and "formal" categorical approach) (citations omitted).

such that they are directly analogous." *See Portanova*, 961 F.3d at 256–58 (citing *Williams v. Att'y Gen. United States*, 880 F.3d 100, 105 (3d Cir. 2018)).

Employing that approach allows us to answer the question at hand with common sense. Does New Jersey's offense of possession with intent to distribute cocaine prohibit conduct relating to narcotic drugs? Specifically, is possessing with intent to distribute cocaine in New Jersey conduct that has a logical or causal connection to narcotic drugs as defined federally? It would strain credulity to answer that question in the negative even if ioflupane was excluded from the federal narcotic drugs definition. Put another way, the overlap between the federal and New Jersey definitions of cocaine is so significant that the logical or causal connection between the two is plain. Thus, Jackson's New Jersey cocaine conviction is a felony drug offense.[10]

---

[10] The court also rejects Jackson's argument that applying the §851 enhancement would violate his Fifth and Sixth amendment rights because "the facts required to prove an enhancement under §§802(57) and 851 go beyond the bare fact of a prior conviction that increases the mandatory sentencing range and must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." (Doc. 89) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). Jackson stated further he "does not admit, and the government did not prove at trial, and the jury did not find beyond a reasonable doubt, that, for the 'serious drug felony predicate,' [he] served more than one year imprisonment, that the offense was a controlled substances offense, that the statutory maximum was ten years, and that [he] was released within 15 years  of the federal offense." In a footnote, Jackson states he "maintains similar arguments as it relates to the 'felony drug offense' predicates[.]" Jackson's constitutional argument fails under either

III.    **CONCLUSION**

In light of the foregoing, Jackson's prior 2006 New Jersey cocaine conviction is a "felony drug offense." The court will **OVERRULE** Jackson's objection to the PSR and **DENY** his motion to dismiss the information of prior convictions. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 6, 2023**
20-291-03

_____

predicate offense definition because the court's finding that his New Jersey conviction is categorically a predicate felony drug offense is a "legal, rather than factual determination that depends only on the 'fact of prior conviction,'" which is an explicit exception to the principle that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Portanova*, 961 F.3d at 255 n.11 (quoting *Apprendi*, 530 U.S. at 490.).

- 16 -